UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

NIGHT BOX
FILED
APR 26 2002
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

JOEL TUITT and ALGEAN TUITT, his wife,

    Plaintiffs,

v.

HOWMEDICA OSTEONICS CORPORATION, a foreign corporation,

    Defendant.

CASE NO. 01-1410 CIV HIGHSMITH

Magistrate Judge Garber

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
CAUSATION TESTIMONY OF ROBERT M. ROSE AND MEMORANDUM OF LAW**

    Defendant, HOWMEDICA OSTEONICS CORPORATION, by and through undersigned counsel hereby moves *in limine* to preclude Plaintiff's expert, Robert M. Rose, Scd., P. Eng.., from providing medical causation testimony and in support thereof states as follows:

    **Background:** On February 16, 1999, Dr. Richard Levitt implanted a Howmedica unicompartmental knee prosthesis in the medial aspect of Plaintiff, Joel Tuitt's, left knee. The prosthesis consists of a totally metal femoral component and a tibial component made of polyethylene across which the femoral component articulates. Plaintiff experienced pain and swelling continually after receipt of the prosthesis. Dr. Levitt was unsure of the cause of the problem, but speculated that the tibial component was loose, a known complication of implant

surgery. In August, 2000, Dr. Levitt received a letter from Howmedica advising him that some uniknee prostheses had reached the market after their 5 year shelf-life had expired, which could result in the polyethylene component becoming brittle. Tuitt's prosthesis was implanted about 5 months past its expiration date. Dr. Levitt removed Tuitt's uniknee prosthesis in October, 2000 and replaced it with a Howmedica total knee prosthesis. The explanted prosthesis went from the operating room to pathology, where it was examined and discarded in four weeks in keeping with normal South Miami Hospital practice.

Plaintiff contends that his October 2000 revision surgery was necessary because the polyethylene tibial component exceeded its recommended shelf life and had delaminated prematurely. Howmedica contends that the tibial portion of the prosthesis was loose within two months of the implant surgery. This is a well known complication of this procedure. Furthermore, this loosening was due to factors unrelated to the condition of the polyethylene at the time of implantation. Howmedica anticipates conflicting testimony on this point from Dr. Levitt and Howmedica's expert, Dr. Wender, both orthopaedic surgeons.

Plaintiff retained Robert Rose, Scd., P. Eng., an MIT materials engineering professor as an expert. Even though Dr. Rose has not examined Tuitt's prosthesis, Howmedica does not question Dr. Rose's qualifications to testify in general about the properties of polyethylene. However, in his deposition, Dr. Rose offered opinion which clearly are clinical medical opinions about the cause of Plaintiff Tuitt's pain and discomfort and the reason for the failure of his prosthesis. Dr. Rose, an

engineer, is not qualified to make clinical medical judgments, and he should not be permitted to do so at trial.

**Analysis:** In deposition, Dr. Rose gave the opinion that polyethylene particles caused damage to the bone stock resulting in Tuitt's prosthesis becoming loose, and leading to the October 2000 revision surgery. To reach this conclusion, he relies on his review of Dr. Levitt's medical records. Dr. Rose has no expertise and ability to determine whether the prosthesis was properly aligned, whether Dr. Levitt's cementing technique was proper, whether Tuitt's size (270 lbs.) was a significant factor in the loosing, or the effect of any other of the various clinical factors at play here. Dr. Rose has not reviewed x-rays or bone scans, nor is he qualified to do so. In short, Dr. Rose is not qualified to testify why Plaintiff Tuitt in particular needed revision surgery.

During his deposition, Dr. Rose testified that a mechanical breakdown in the knee prosthesis "began immediately after the implantation," relying solely on the <u>symptoms of the Plaintiff provided in the medical records</u> in reaching such a conclusion. *See Deposition of Dr. Rose*, pg. 77 lines 7-13. In particular, Dr. Rose stated that the patient's activity could not have been a factor because of "continued pain and swelling," and admits that he reached these conclusions based on his interpretation "purely on the medical records." *See Deposition of Dr. Rose*, pg. 122 lines 20-24; pg. 123 1-17.

FOWLER WHITE BURNETT P.A. • 100 SOUTHEAST SECOND STREET, SEVENTEENTH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

Moreover, Dr. Rose goes on to discuss the osteolytic activity which took place within the plaintiff's knee structure itself.[1] Specifically, Dr. Rose testified that in his review of the operative report the surgeon's reference to bone scans indicates that "there was loosening present." *See Deposition of Rose*, pg. 129 lines 16-21. He goes on to conclude that osteolysis, or degeneration of bone tissue, was present in this instance because the operative report indicates that the prosthesis components were subsequently removed without difficulty with the preservation of the underlying bone. *See deposition of Dr. Rose*, pg. 130 lines 1-10.

Dr. Rose is unqualified to give these medical opinions as he does not have the requisite medical training or education to supplement his expertise in materials engineering. *See cf. Bowers v. Northern Telecom*, Inc., 905 F.Supp. 1004 (N.D. Fla. 1995). He has never treated patients nor prescribed medications. *In Re Diet Drugs*, 2000 U.S. Dist. LEXIS at *16. He has no experience or training in diagnosing and treating patients. *Plourde v. Gladstone*, 2002 U.S. Dist. LEXIS 4957 (Dist. VT March 20, 2002). Therefore, because Dr. Rose is not a medical doctor and does not have the requisite training, knowledge or education to testify as to such, his testimony should be prohibited as the probative value of his opinions relating to causation are substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.

Federal evidentiary rules control on the admissibility of an expert's opinion on injury causation. *Plourde v. Gladstone*, 2002 U.S. Dist. LEXIS 4957 (Dist. VT. March 20, 2002); *see also e.g. McCullock v. H.B. Fuller Co.*, 239 F.3d 179, 184 (2d Cir. 2001); *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376 (Dist. Ill. 1992); *Forrestal v. Magendantz*, 848 F.2d 303, 305 (1st

---

[1] Osteology is the branch of anatomy that deals with the structure and function of bones. *See Stedman's Medical Dictionary*.

Cir. 1988)(holding that federal evidentiary rules control on questions of admissibility of expert medical witness testimony, even in diversity cases).

When faced with a proffer of expert testimony, the trial judge must act as a "gatekeeper" by assuring the reasoning or methodology underlying the proffered testimony is scientifically valid, and that it properly can be applied to the facts in issue. *Id.* Therefore, an obligation is placed upon a trial judge to ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *In Re Diet Drugs Product Liability Litigation*, 2000 U.S. Dist. LEXIS 9661 (E.D. P.A. June 28, 2000).

The Federal Rules of Evidence allow a court to intercede and to limit expert testimony where a witness attempts to give an opinion on a subject for which he is not qualified, recognizing that there is some limit to every expert's expertise and that he can not be allowed to go beyond it. *See O'Conner v. Commonwealth*, 807 F.Supp. 1376; *see also Canino v. HRP, Inc.*, 105 F.Supp.2d 21, 27 (N.D. N.Y. 2000). Furthermore, it is well settled in Florida that an expert may not offer an opinion on a different field or discipline than his/her expertise. *See Smithson v. V.M.S. Realty, Inc.*, 536 So.2d 260, 262 (Fla. 3d DCA 1988); *United Technologies Communications Co. v. Industrial Risk Insurers*, 501 So.2d 46, 50 (Fla. 3d DCA 1987); *Goodyear v. Tire & Rubber Co. Inc. v. Ross*, 660 So.2d 1109, 1111 (Fla. 4th DCA 1995); *Husky Industries, Inc. v. Black*, 434 So.2d 1195 (Fla. 1982). Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience or education with the subject matter of the witness's proposed testimony. *O'Conner*, 807 F. Supp. at 1390; *Carol v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).

An analogous situation has arisen is the orthopedic bone screw litigation. First, Judge Bechtle at the multi district level and, subsequently, many judges in the transferor districts, have rejected the causation testimony of Dr. Harold Alexander, a Ph.D. in the field of orthopedic bioengineering. *See In re: Orthopedic Bone Screw Products Liability Litigation,* 1997 U.S. Dist. LEXIS 851 (E.D. PA 1997). While the court accepted that Dr. Alexander was an expert in orthopedic bioengineering, Judge Bechtle held that he was not qualified to testify about the clinical complications of pedicle fixation. The district judges in the transferor courts have likewise rejected Dr. Alexander's opinion on medical causation because, among other reasons, Dr. Alexander was not a medical doctor. *See, e.g., See Edgar v. Danek Medical Inc.*, 1999 U.S. Dist. LEXIS 6431 (M.D. Fla. March 31, 1999); *Hensley v. Danek Medical, Inc.*, 32 F.Supp.2d 345 (W.D. N.C. 1998); *Kirkman v. Sofamor,* 1998 U.S. Dist. LEXIS 13357 (W.D. N.C. July 21, 1998); *Hill v. Danek Medical, Inc.*, 1998 U.S. Dist. LEXIS 21749 (E.D. N.C. September 9, 1998).

Because Dr. Rose is not a medical doctor, his causation testimony in this case must be excluded. *Kirkman*, 1998 U.S. Dist. LEXIS at *9; *see also Hill v. Danek Medical, Inc.*, 1998 U.S. Dist. LEXIS 21749 (E.D. N.C. 1998)(holding that in back injury cases causation can only be establish by expert medical testimony and stating that a report is not expert medical evidence on causation when its author is not a medical doctor).

The Plaintiff has the burden of establishing by a preponderance of the evidence that Dr. Rose is properly qualified to present expert opinions on causation in this case. *Daubert I,* 509 U.S. at 591; *Daubert II,* 43 F.3d at 1315; *Plourde*, 2002 U.S. Dist. LEXIS 4957 at *25; *O'Conner*, 807 F. Supp. at 1399. In order to meet this burden, the Plaintiff cannot qualify Dr. Rose as an expert capable of

FOWLER WHITE BURNETT P.A. • 100 SOUTHEAST SECOND STREET, SEVENTEENTH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

testifying to the causation of injury by showing that his specialized knowledge or training in materials engineering. *See In re Diet Drugs*, 2000 U.S. Dist. LEXIS at *11. It is not enough that a witness is qualified in some general way, the witness must be possessed of special knowledge about the discrete subject upon which he is called to testify. *United Technologies Communications Co. v. Industrial Risk Insurers*, 501 So.2d 46 (Fla. 3d DCA 1987). Yet, in this instance, Dr. Rose, a materials engineer, rendered opinions that are, in essence, medical opinions outside his area of expertise.

Courts across the nation, including the Middle District of Florida, have recognized the danger in allowing a non-medical doctor to testify as an expert in causation, and have appropriately precluded their testimony. *In Re Diet Drugs Liability Litigation*, 2000 U.S. Dist. LEXIS 9661 (E.D. P.A. June 28, 2000)(holding that pharmacologist who was a visiting scientist at MIT and visiting instructor in the Department of Pharmacology at the University of New England College of Osteopathic Medicine was unqualified to render expert opinion relating to causation because he was not a medical doctor); *Conde v. Velsicol Chemical Corp.*, 804 F.Supp. 972 (S.D. Ohio 1992)(family practitioner without specialized training in toxicology unqualified to testify that liver condition was caused by exposure to toxic chemical); *Heller v. Shaw Indus. Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)(holding that a certified industrial hygienist who was not a medical doctor was unqualified to testify that volatile organic compounds emitted from household carpet caused plaintiff's illness); *Franklin v. The Public Health Trust of Dade Co.*, 759 So.2d 703 (Fla. 3d DCA 2000)(holding that doctor was a general surgeon rather than an emergency surgeon and thus was unqualified to render an expert opinion regarding emergency care).

FOWLER WHITE BURNETT P.A. • 100 SOUTHEAST SECOND STREET, SEVENTEENTH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

WHEREFORE, the Defendant, Howmedica Osteonics Corporation respectfully prays this Court grant its motion in limine to preclude the expert testimony of Robert M. Rose, Scd., P. Eng. as it relates to causation of injury.

The undersigned has conferred with opposing counsel and represents to the Court that the parties were unable to resolve this matter.

Respectfully submitted,

James P. Murray
Fla. Bar No. 328960
FOWLER, WHITE, BURNETT, HURLEY,
BANICK & STRICKROOT, P.A.
Bank of America Tower, 17th Floor
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Motion in Limine* was faxed and mailed this 26th day of April, 2002 to: Jonathan R. Friedland, Esq., MERL, BURSTYN & ASSOCIATES, P.A., Courthouse Tower, Suite 2200, 44 West Flagler Street, Miami, FL 33130.

James P. Murray

[jpm] W:\55452\MOTLIM03.JPM{4/26/2-15:22}